**Roy WILLIAMS et ux., Appellants,**

v.

**Donna Michele NEUMANN et al., Appellees.**

Court of Appeals of Kentucky.

July 1, 1966.

Edward W. Bensinger, Louisville, for appellants.

Robert W. Zollinger, Louisville, for appellees.

HILL, Judge.

This is an appeal from a judgment dismissing appellants' petition to adopt and change the name of Donna Michele Neumann, three and one-half years old, and awarding her custody to appellees Wanda J. Yates, natural mother of Donna Michele, and James D. Yates, second husband of Wanda J. Yates, who it is now claimed is the natural father of Donna Michele Neumann.

At the time of the marriage of Wanda J. Yates to Conrad F. Neumann, she was thirteen years of age. Before their separation, she bore Neumann four children. After their separation and before they were divorced, she had two more children shown by the birth certificates to belong to Neumann. In the divorce proceeding, Neumann was awarded custody of the four older children.

Previous to the birth of Donna Michele on January 4, 1963, the mother of James

D. Yates, who worked with appellant Anna Mae Williams, inquired of Mrs. Williams whether she was interested in adopting a child. Mrs. Williams was advised that Wanda intended to "give" her baby away as soon as it arrived. At this time Wanda was not married to Yates, although Yates' mother apparently was familiar with the pregnancy of Wanda and her desire to "give away" her expected child. She did not marry Yates until December 16, 1963, ten days after her divorce from Neumann.

When Donna Michele was four days old, Wanda accompanied by Mrs. Hines, mother of Yates, carried Donna Michele to the home of appellants, Mr. and Mrs. Williams, placed her on the bed and said, according to Mrs. Williams, "there she is and I never want to see her again." Wanda stated she was "not sure" what was said about adoption at the signing of consent for adoption on May 16, 1963; but she stated, "The only thing that I do know is that I said that I did want this child back if anything happened to them * * *." Further along in her testimony Wanda stated, "she (Mrs. Williams) couldn't have her to keep." But the facts are crystal clear and uncontradicted that Wanda never visited the child, contributed to her support, or gave her a gift for about a year after turning her over to the Williamses.

At the present time, appellant Roy Williams is about seventy-three years of age and his wife, Anna Mae, is about fifty-one. The former is retired, but Anna Mae is an inspector with American Radiator Standard Sanitary Manufacturing Company. They do not own their home but have sufficient savings to pay the down payment on one. They have sufficient income for comfortable living. Mrs. Williams works from 3:00 until 11:00 p. m. five days a week for which she earns $102.50 weekly.

Appellee Wanda J. Yates is about twenty-five years of age, and her present husband is near the same age. They own their own home, have three of Yates' children by his first marriage, and Wanda's fifth child, a boy born before her divorce from Neumann which she maintains belongs to Yates, and assuming her pregnancy at the time her deposition was given was fruitful there are five children in the home.

From the evidence, we find, as was found by the chancellor, appellees have a "pleasant and attractive" home. So do the appellants. It is apparent that appellee Wanda J. Yates has regained her health after two operations in August 1963 and from the devastation and depletion consequent to producing six children in less than eight years, commencing at the age of fourteen. She merits the admiration and respect of all persons familiar with her past experience. Her effort to bring the "brood" together under one roof is proof positive of the resurrection of motherly love and instinct. She is not to be condemned for her acts in delivering her baby to appellants. Perhaps she was justified by the circumstances existing at that time. But the fact remains she created the condition she now seeks to alter.

■ Now, let's turn the coin. We are not primarily concerned with sentimental considerations for the mother and appellants who seek legal adoption; although these considerations may be of secondary importance and will be discussed later. The welfare of the child is the paramount question. Certainly, there are and will continue to be heartaches experienced by both parties in this controversy. Anna Mae Williams has attended every baby and childhood need and demand of Donna Michele from the fourth day of her life when she could neither focus her eyes nor raise her head. Up to this hour, according to this record, Donna Michele has known no other mother as she has never seen her natural mother. She is now three and one-half years old and talking. She cannot be suddenly transplanted like a dogwood tree without running serious and dangerous risk of frustration and bewilderment.

■ Appellees presented the testimony of a female professor from the Kent School

for Social Workers, University of Louisville, who stated the well-known philosophy that, ordinarily, adoption is available only to those persons of child-bearing age. From the painstaking findings of fact, the chancellor determined that, primarily, due to the ages of appellant Roy Williams and Anna Mae Williams the best interest of the child would be served by refusing adoption by appellants and placing the custody of the child with appellees; however, the chancellor found appellants better situated financially to have custody of the child. We are thus presented with a finding of fact by the chancellor in a serious and important child custody case. It is the general rule in all such questions, the findings of the chancellor will not be disturbed unless "clearly erroneous." CR 52.01. Also see Hall v. Hall, Ky., 386 S.W.2d 448 (1964).

This court held in Lee v. Thomas, 297 Ky. 858, 181 S.W.2d 457, in a factual situation very similar to the case at bar, except that in the Lee case the mother was not as well situated for custody as the mother in the present case, that:

"As a general proposition parents have the primary and superior right to the custody of their offspring above that of all others, but the declared law has injected into such cases a factor of almost equal dignity as that of the right of the parents, and which is the welfare of the child afforded by the superior advantages that adopting parents are about to and can furnish it and of which it would be deprived if it remained with its natural parents. But no opinion of any court so far as we are aware approves the right in anyone to take away from natural parents the custody of their children solely upon the ground that the adopting parent is better prepared to provide superior advantages to the child which the natural parent for any cause might be unable to provide. But where that situation exists, and the parent has agreed that his or her child might be adopted and has executed such consent or offer in the manner pointed out by the statutory regulations of the particular jurisdiction which has been acted on by the proposed adopter, then such consent or agreement, in the absence of fraud or duress in its procurement, plus the vastly increased opportunities of the adopted child, creates a case where there is no alternative but to sustain the adoption applied for.

\*    \*    \*    \*    \*    \*

"Here appellees, in reliance on appellant's written consent, not only took custody of the involved infant, but also devoted time and money in preparations for carrying out their duty as foster parents for 15 months without any objections communicated to them by the mother of the infant. Even if fraud or duress in obtaining the consent of the parents was available to repudiate the consent before final judgment in the adoption proceedings, such defense, if any, cannot prevail here because there is no testimony whatever in support of fraud, duress or any other avoiding ground for such repudiation."

With reference to the age of the adoptive parents, the opinion in Lee went on to say:

"Therefore, when such an investigation is made and the facts so reported to the Board preeminently justify the adoption applied for, *no such reasons (age) as are set forth in the report in this case should interfere so as to influence the court in the determination of the case.*" (We emphasize and insert (age) in this quotation.)

See also Re Brown (Fla.) 85 So.2d 617, 56 A.L.R.2d 820, and Re Duke (Fla.) 95 So. 2d 909.

In a Texas case, McGowen v. McGowen, Tex.Civ.App., 364 S.W.2d 447 (1963), the court approved adoption by parents ages sixty-six and forty-nine.

■ In the present case, the age of Roy Williams is an unfavorable circumstance in the determination of the adoption ques-

tion, but the adoptive mother is now fifty-one with a life expectancy of over twenty-two years. She is above the age of the average child-bearing period, yet there are some whose child-bearing period extends beyond the age of fifty-one years.

It is the conclusion of this court that the chancellor was clearly erroneous in refusing the adoption sought and in placing custody of the child with appellees.

The judgment is reversed with directions for judgment consistent with this opinion.