[Civ. No. 34486. First Dist., Div. Two. Jan. 20, 1975.]

Adoption of MICHELLE T., a Minor.
RALPH B. et al., Petitioners and Appellants, v.
STATE DEPARTMENT OF HEALTH, Objector and Respondent.

COUNSEL

Vasquez & Vasquez and Louis V. Vasquez for Petitioners and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Eleanor Nisperos, Deputy Attorney General, for Objector and Respondent.

OPINION

**TAYLOR, P. J.**—This is an appeal by petitioners, Ralph and Alice B., age 71 and 55 years, respectively, from a judgment denying their petition for the independent adoption of T., a 2-year-old female child. They contend that the court abused its discretion as their petition was denied on the sole ground of their age, without consideration of other relevant factors and the overriding "best interest of the child." We have concluded that the judgment must be reversed. The question is one of first impression.

T. was born on June 30, 1972, in Pueblo, Colorado. Prior to her birth, petitioner, Mrs. B. had been informed by her niece in Colorado that T. would be immediately placed for adoption by her natural mother. Arrangements were made to place T. with petitioners. The natural mother signed a consent to the adoption, and petitioners received the child on July 5, 1972. Subsequently, on April 25, 1973, they filed the instant petition to adopt pursuant to Civil Code section 226.

The State Department of Health[1] filed its investigative report, required by Civil Code section 226.6,[2] recommending that the petition be denied, and that T. be committed to the care of the Department, on the sole ground of the age of petitioners, 70 years (father), and 54 years (mother), at the time of the hearing in August 1973. The court granted a

---

[1]Formerly known as the Department of Social Welfare, hereafter generally referred to as "the Department."

[2]Civil Code section 226.6 provides in pertinent part: "It shall be the duty of the Department of Health or of the licensed county adoption agency to investigate the proposed adoption and to submit to the court a full report of the facts disclosed by its inquiry with a recommendation regarding the granting of the petition within 180 days after the filing of the petition. In those cases in which the investigation establishes that there is a serious question concerning the suitability of the petitioners or the care provided the child or the availability of the consent to adoption the report shall be filed immediately."

stay of execution of its judgment pending this appeal.

Title 22 of the California Administrative Code, section 30689, mandates that the study to be performed by the Department prior to independent adoptions ". . . *shall cover* how placement was made; acceptance of adoption, personal adjustment, marriage, family relationships, understanding of the needs of children, plans and opportunities for the child's social development, religious training, education, health, housing, and financial resources.

"A medical report of an examination of each adopting parent made within a year of the filing of the report *shall* be obtained. This *shall* include serological tests and chest X-rays." (Italics added.)

Moreover, the Department's Regulation No. AD-322.2 states that in preparing the requisite study, "[t]he names of four references should be secured and information should be obtained from them through personal interview or correspondence."

The uncontroverted evidence reveals that the Department admittedly failed to comply with any of the above provisions,[3] as it had already determined to recommend denial *solely* because of petitioners' age.

■ The Department now maintains it was not required to follow the above mandatory requirements, as the last sentence of the statute (Civ. Code, § 226.6, quoted in fn. 2 above) gives it the right to recommend denial immediately in cases where there is serious question concerning the suitability of the petitioners. We cannot agree. The plain meaning of the statute, when read as a whole, is that in cases of serious question, the Department must shorten the 180-day time frame in which to submit a *"full report of facts disclosed by its inquiry. . . ."* (Italics added.) This language does not authorize the Department to file an incomplete report, as was admittedly done in this case.

Furthermore, the Department's Guideline No. AD-322.1(L) provides: *"Age of Petitioners.* Age should be evaluated in relation to other factors, recognizing that the ability of a person of a given age to care for a child will vary according to his physical and emotional health as well as his

---

[3]The study report did not consider the health of either petitioner. Medical reports, subsequently produced by petitioners for the record, indicate petitioners are in good health. Moreover, the Department made no effort to interview or correspond with the references supplied by petitioners. Letters from the references, placed in the record by petitioners, strongly endorse the parental capacity of petitioners.

flexibility and general outlook on life. In the total evaluation, the age of the adopting parent should be considered *only as it relates to all the study factors,* including the length of time that the child has been in the home and the relationships that have been established." (Italics added.) In the instant case, the Department admitted that all factors except petitioners' age were favorable. Yet, it chose to ignore the positive factors and focus on the single detrimental factor.

The record indicates that apart from age, petitioners rank very high on each of the other factors, and would support a determination that petitioners could continue to be capable and loving parents for T. They have a stable, 20-year marriage, are financially secure, have extensive family in the area, including nieces and nephews with children in T.'s age group, and are in good health.[4] Finally, the letters of reference attest to petitioners' integrity and their love and concern for T. As indicated above, the Department admits that except for their age, petitioners have no negative characteristics in relation to the adoption.

■ The only question before us is whether the trial court abused its discretion in sustaining the Department's recommendation of de- nial. ■ The decision of the court below will not be set aside unless a clear abuse of discretion is shown (*Adoption of Smith,* 270 Cal.App.2d 605, 609 [75 Cal.Rptr. 900]; *Adoption of Thevenin,* 189 Cal.App.2d 245, 251 [11 Cal.Rptr. 219]). The fact that the Department failed to comply with its own mandatory regulations and guidelines is not necessarily determinative. The overriding concern in an adoption case is "the best interest of the child" (Civ. Code, § 227; *Matter of Bewley,* 167 Cal. 8, 10 [138 P. 689]; *Adoption of Thevenin, supra,* p. 253; cf. *San Diego County Dept. of Pub. Welfare* v. *Superior Court,* 7 Cal.3d 1, 9 [101 Cal.Rptr. 541, 496 P.2d 453]). The "best interest of the child" is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.

The Department, relying on *Adoption of Driscoll,* 269 Cal.App.2d 735, 736-737 [75 Cal.Rptr. 382], *Adoption of Martin,* 76 Cal.App.2d 133, 136 [172 P.2d 552], and *In re Fahlman,* 84 Cal.App. 248, 251 [257 P. 893], argues that "age disparity is a proper consideration in determining qualification for adoption of a particular child." We note that petitioners have never urged that their age is *not* a relevant factor, but complain that

[4]When confronted with the medical reports while on the stand, Department representatives stated that they saw the reports after filing their study with the court, but the medical evidence presented did not change their conclusion to deny the petition.

it was used to automatically exclude them at the outset instead of being properly weighed and considered in conjunction with the other factors as required by the statute, as well as the Department's own guidelines.

Unlike the Department, we do not find the cited cases determinative. For instance, in *Driscoll, supra,* the denial stemmed from *both* age *and health* considerations, whereas in this case, petitioners were denied an evaluation of health as well as all other factors, except age. In *Driscoll,* the court did state that "[t]he advanced age of adoptive parents is a disadvantage to be *considered* in determining if *the interest of the child* would be promoted by the adoption" (*supra,* at p. 737; italics added). But it does not follow that age alone is a *conclusive* factor. In *Fahlman,* neither the suitability nor age of the older couple was before the court.[5] Finally, *Martin* involved adoption by the maternal grandparents of a child who had been living with the paternal grandparents. The case is not in point because the key consideration was the fact that the child's epileptic natural mother also resided with the maternal grandparents. We note, however, that the court granted the petition of the maternal grandparents, who were 68 and 62 years of age. Thus, no California court has considered the question before us, i.e., whether the trial court abused its discretion in concluding that, in the best interest of T., the age of petitioners alone was such a negative factor that none of the other factors need be considered despite the statutory and regulatory mandates to the contrary.

■ The Department argues that the following general testimony of its staff members supports its position: 1) older adoptive parents may find it more difficult to put out the physical effort required to control a young child; 2) older adoptive parents have a greater likelihood of contracting extended chronic illness; and 3) the child may encounter peer group difficulties because of the advanced age of the adoptive parents.

While these are obviously legitimate concerns, they cannot be considered the sole justification for denying the instant petition. The

---

[5]In *Fahlman,* 84 Cal.App. 248 [257 P. 893], two different couples sought to adopt the subject child. The Joys were not related to the child, while the Burlins were the child's maternal grandparents. The pertinent procedural sequence was as follows: 1) the Joys petitioned Superior Court in Merced County for adoption; 2) the Burlins filed a like petition in Superior Court of Stanislaus County; 3) at the Merced hearing, the Burlins appeared and filed a petition in opposition to the Joys' petition; 4) the Joys' Merced petition was granted; and 5) the Burlins appealed from this judgment. The appellate court emphasized that in this context, the only question was the fitness of the Joys, and the age of the maternal grandparents was immaterial.

staff's testimony falls far short of establishing that the adoption would not be in the best interest of T. It may be true that these disadvantages are frequently associated with parents of advanced age. The Department, however, made little or no effort to ascertain the physical stamina and general health of these particular petitioners.[6] Thus, no effort was made to determine whether the specific problems listed above were likely to be encountered in this case. The problems were merely *assumed* from the factor of age alone. Furthermore, while the trial court apparently considered the above mentioned general physiological, psychological and sociological factors weighing against the adoption, it did not, because of the Department's failure to make a full report, consider the evidence in favor of the adoption or the provisions of the statute and the Department's guidelines.

In·considering the application of the Department's guideline relating to age in the instant case, we take judicial notice[7] of a recent authoritative work on child placement, cited by the Supreme Court of California in *In re B.G.*, 11 Cal.3d 679, 693 [114 Cal.Rptr. 444, 523 P.2d 244]. Beyond the Best Interests of the Child by Goldstein, Freud & Solnit (1973), emphasizes the importance to a child of continuity of parental relationships. According to the authors, changes or interruptions in this relationship cause the child to regress "along the whole line of his affections, skills, achievements, and social adaptation" *(id.* at p. 18). "Physical, emotional, intellectual, social, and moral growth does not happen without causing the child inevitable internal difficulties. The instability of all mental processes during the period of development needs to be offset by stability and uninterrupted support from external sources. Smooth growth is arrested or disrupted when upheavals and changes in the external world are added to the internal ones" *(id.* at p. 32).

Recently, authorities have recognized the importance of the continuity of the environment and the trauma to a young child caused by separation from its established home has been viewed by the courts as a serious consideration in adoption cases. *(In re Adoption of Tachick* (1973) 60 Wis.2d 540 [210 N.W.2d 865, 869-871, and fns. 9 and 10 at p. 872].)

[6]The Department indicated that people over 65 have problems "controlling" children between 1 and 10 years of age. Yet in this case, one of petitioners was only 54 at the time of the hearing, and would therefore be about 63 when T. becomes 10, and 71 when T. becomes an adult at age 18. The first consideration above clearly applies to the first few years. The second is mitigated by the good health and financial security of petitioners; and the third is apparently eliminated by the presence of a large family with a number of children in T.'s age group.

[7]Evidence Code sections 459, 454.

*Tachick* involved the adoption of a 3½-year-old by petitioners, who were 59[8] and 53 years of age. The court recognized the two-pronged nature of separation trauma: the trauma resulting from the death of the older adoptive parents; and that resulting from removal of the child from the only home he or she has known. The court commented at page 871: "Death is inevitable and we have no assurance that if the child were to be adopted by younger people that they would live to a ripe old age. What is of concern is the loss of the parental guiding hand at an early age." The *Tachick* court examined the damage to a child's emotional health resulting from separation trauma and concluded that the state's witnesses and the lower court gave too little weight to the separation trauma. The court reversed with directions to grant the petition for adoption. While the *Tachick* court was obviously influenced by the fact that the petitioners were the child's grandparents, we find the analysis helpful in resolving the instant case.

Furthermore, in *Williams* v. *Neumann* (Ky.App. 1966) 405 S.W.2d 556, the court stated that "[the petitioners have] attended every baby and childhood need and demand of [the child] from the fourth day of her life when she could neither focus her eyes nor raise her head. Up to this hour, according to this record, [she] had known no other mother as she has never seen her natural mother. She is now three and one-half years old and talking. *She cannot be suddenly transplanted like a dogwood tree without running serious and dangerous risk of frustration and bewilderment.*" (*Id.* at p. 557; italics added.) The court concluded that denial of the petition must be reversed and placed the child with the petitioners, *who were 73 and 51 years of age,* respectively. The court also emphasized (at p. 559) that the life expectancy of the 51-year-old adoptive mother was over 22 years.

Furthermore, the concept of "best interest" presents a relative standard. The question is not whether a particular set of circumstances is in the best interest of the child, but whether a particular set of circumstances relative to an alternative set of circumstances is in the best interest of the child. In this case, the alternative presented is commitment of the child to the Department in order that "adoptive or other suitable plans" may be arranged. While we recognize the difficulty the Department would have in submitting more definite plans, we conclude that the alternative presented places the court in a difficult position. It is asked to weigh the known against the unknown. It is asked to speculate on the future placement and to trust that it might be better than the home

---

[8]For consistency with the statement of facts of the instant case, the father's age is stated first.

provided by petitioners. Although the court is powerless to predict future events[9] which may bear on T.'s welfare, it has nevertheless, by its ruling in favor of the Department, affected the immediate continuity of the child-parent relationship.

Goldstein proposes refining the "best interest of the child" to a test which provides for "the least detrimental *available alternative* for safeguarding the child's growth and development" (*Id.* at p. 53; italics added). The least detrimental alternative "is that specific placement . . . which maximizes, in accord with the child's sense of time and on the basis of short term predictions given the limitations of knowledge, his or her opportunity for being wanted and for maintaining on a continuing basis a relationship with at least one adult who is or will become his psychological parent." (*Id.* at p. 53.) The authors thus suggest that it may be wiser to favor a situation certain, which may not be totally satisfactory, than to engage in predictions of future events which may or may not be in the "best" interest of the child.

■ We believe this argument to be quite compelling in the light of the facts of the instant case. The trial court was not asked to weigh available alternatives, but to remove T. from a warm, stable family home, merely because of petitioners' age, and set her adrift in a sea of bureaucratic uncertainty. In such a situation, T. may bounce from one foster home to another before final placement sometime hence. We do not say that it would be an abuse of discretion to deny the petition in all cases where the Department presents no specific alternative plan to the court, but all the factors must be considered and must be weighed against the petition. We conclude that there was no substantial evidence to support the implicit finding that the advancing age of petitioners alone was detrimental to the best interest of T. This is particularly true when, as here, both petitioners are in excellent health, and the adoptive mother has a life expectancy of some 20 years, well past the adulthood of T. (*Williams* v. *Neumann, supra,* p. 559).

Our conclusion finds support in a number of authorities from other jurisdictions. *In re Duke* (Fla. 1957) 95 So.2d 909, involved the adoption

---

[9]As is well stated by Goldstein "No one . . . can forecast just what experiences, what events, what changes a child, or for that matter his adult custodian, will actually encounter. Nor can anyone predict in detail how the unfolding development of a child and his family will be reflected in the long run in the child's personality and character formation. Thus the law will not act in the child's interests but merely add to the uncertainties if it tries to do the impossible—guess the future. . . . In the long run, the child's chances will be better if the law is less pretentious and ambitious in its aim, that is, if it confines itself to the avoidance of harm and acts in accord with a few, even if modest, generally applicable short-term predictions." (*Id.* at pp. 51-52.)

of a 2½-year-old child by petitioners who were 48 and 63 years of age. The alternative presented was state care of the child. In reversing denial of the petition, the Supreme Court of Florida noted that while the petitioners were by no means young, they were not in their dotage. The court stressed that a petition for adoption involves a weighing of many elements, all important, but rarely all offered to a child by prospective parents. The court concluded that the question is not one of perfection and held that denial of the petition on the basis of age and income constituted reversible error.

*In re Adoption of Tachick, supra,* as indicated above, involved the reversal of the denial of a petition for the adoption of a 3½-year-old child by a couple who were 59 and 53 years of age. As in the instant case, the alternative was commitment of the child to state care. The court in *Tachick* emphasized the absence of known alternatives, and concluded *that the sole issue was whether the petitioners could provide the elements necessary for the child to develop to full potential as a human being.* The court clearly implied that it was improper for "[t]he trial court and the [state's witnesses to] treat this case as the usual case of adoption by a stranger and contrast the environment of the petitioners' home with the ideal home, which perhaps does not exist, and in which it is assumed this child now 3 and ½ years old can be easily placed for adoption in the future." (*Id.* at p. 869.)

In *Madsen* v. *Chasten* (1972) 7 Ill.App.3d 21 [286 N.E.2d 505], the trial court denied the petition for adoption solely because of petitioners' age (53 and 58). In reversing, the appellate court concluded that age of the adopting parents should not be the controlling factor. "The tenor of the decree makes the single factor, age, controlling over all others—not in terms of present factors and circumstances or even those of the near future, *but upon the projections of time beyond the range of valid human prediction.*" (*Id.* at p. 506; italics added.)

*In re Haun* (1972) 31 Ohio App.2d 63 [60 Ohio Ops.2d 163, 286 N.E.2d 478], involved a petition for adoption of a 3-year-old child by a couple 68 and 55 years of age. Although, like petitioners here,[10] they met all standards other than age, their petition was denied at trial level (on the recommendation of the agency) solely because of age. In reversing, the appellate court noted that the state's argument had "more mathematical accuracy than persuasiveness" (*Id.* at p. 482), and concluded that "few

---

[10]As in the instant case, the agency urged the enhanced possibility that the child would suffer an identity crisis because her peers would be relating to parents while she related to grandparents.

standards in human affairs can be procrustean in application. In the light of the total evidence, and the singular emphasis on age as the key factor in denying consent, the denial in this case seems an example of a loss of the spirit of the *whole* adoption system while holding to the letter of *part* of it. The fault, the unreasonableness, the arbitrariness and the caprice, lie precisely with this extraordinary emphasis on a single negative factor in the face of remarkably unanimous opinion that by all other standards the appellees are outstandingly qualified to be adoptive parents." (*Id.* at pp. 482-483.)

We believe a similar conclusion is appropriate in the instant case. The record is replete with evidence that, apart from age, petitioners met every requirement necessary for adoption. The trial court failed to consider sources of information mandated by the statute, as well as the Department's own regulations and guidelines. On the sole ground of age, the court eliminated from consideration factors known to be favorable to petitioners. Little or no emphasis was placed on the separation trauma associated with denial, or the unknown nature of any future placement. In adoption cases, courts must be particularly careful to avoid conjecture as to future possible departmental action. The sole issue is whether petitioners are capable of the responsibility they have assumed. We conclude that more compelling reasons than advanced age alone must support the denial of an adoption, particularly when, as here, one of the petitioners has a life expectancy sufficient to guide the child to adulthood.[11]

The judgment is reversed with directions to grant the petition for adoption.

Kane, J., and Rouse, J., concurred.

---

[11]This conclusion is particularly compelling in light of the Department's statistics, judicially noticed pursuant to Evidence Code section 459 (Ellis & Mullins, Independent Adoptions in California, Department of Social Welfare, 1969), which indicate that adoption by parents of advanced age is not as unusual as the Department intimates. These figures underscore the arbitrary nature of the recommendation in the instant case:

| Age (in years) | 1967 | | 1964 | |
| --- | --- | --- | --- | --- |
| | mother (number) | father (number) | mother (number) | father (number) |
| 50-54 | 110 | 138 | 72 | 192 |
| 55-59 | 39 | 98 | 31 | 58 |
| 60 and over | 20 | 54 | 21 | 41 |