WALTER JAMES MADSEN et al., Petitioners-Appellants, v. LINDA LYNETTE CHASTEN et al., Respondents-Appellees.

(No. 11565; ▮▮▮▮▮▮▮▮▮▮)

Fourth District—August 16, 1972.

Pratt, Larkin & Williams, of Bloomington, (Eugene J. Larkin and Robert E. Williams, of counsel,) for appellants.

Paul R. Welch, State's Attorney, and David C. Wochner, of Costigan, Wollrab, Fraker & Wochner, both of Bloomington, for appellees.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

The trial court denied the petition for temporary custody preliminary to adoption, made the infant a ward of the court and directed that the institutional guardian place the child in a home other than that of petitioners.

The single issue:—Was there an abuse of discretion where the sole reason for the order was the age of the petitioners. Upon the date of the hearing, the petitioners were respectively Walter, aged 53 years, and Juanita, aged 58 years. They had received the infant, Linda, in October, 1970, when she was four days old. Petitioners had adopted and raised a son, who in 1968 was killed in overseas military service at the age of twenty years.

The record discloses no blemish upon the present ability, capacity and desire of the petitioners to provide an excellent home and loving care. An immediate neighbor testified that she had never observed a

child to receive better care than did Linda in the home of the petitioners.

A minister established a close professional and personal relationship with petitioners over a period of four years. He testified that substantially one-third of his seminary training had been devoted to clinical psychology and the study of the mental, spiritual and emotional qualities of persons and their reaction to matters producing stress. His study of such matters was maintained on a current basis through professional seminars. He pointed out that such study was an essential part of his role as a professional and ministerial counselor.

In his opinion, the home of the petitioners rated very high in spiritual values, in cultural level, in emotional maturity and stability and economic resources. In his opinion the age of the petitioners was a subordinate factor to the considerations to which he had testified. Other persons testifying in the proceeding entirely support the existence of the values described by the minister.

Witnesses, who established frequent observation of the child in the home, had noticed no suggestion that petitioners suffered stress or fatigue in her care. They have no known physical disabilities and witnesses testified to observing the zestful health of petitioners. The evidence further discloses that the child had been introduced into a close family relationship amongst some sixteen individuals of diverse ages who were related to petitioners. The investigative report filed with the court noted that the furnishings of the home and of the room provided for the child were "lovely".

The husband had an established administrative position with a private University and substantial incidental benefits to such employment. Petitioners have a savings account, substantial life insurance and an unencumbered home and are purchasing items of rental real estate.

The investigative report recommended against the adoption in the language:

"I strongly feel that they may not be able to cope with all the problems facing the girl through difficult pre-adolescent and adolescent years."

No specific statement of facts for such quoted "feeling" appear. On the other hand, the brief of the guardian *ad litem* points out that with the childhood training which the evidence shows may be expected, the child will be well trained and well prepared for the teen age years. A pediatrician, whose speciality included adolescents and who had cared for the deceased son, as well as this infant, described petitioners as "wonderful parents" and noted the excellent growth and development of the child.

The trial court's memorandum noted that the disparity in the ages of the petitioners and the ages of the parents of the child's contemporaries would be unnatural and the circumstances would be as though petitioners were raising a grandchild.

Ill. Rev. Stat. 1969, ch. 4, par. 9.1—2A, authorizes adoption by reputable persons of legal age under no legal disability. The only stated qualification is to adoption by one who is a minor and such may be waived by the court.

We note that par. 9.1—1B of the statute contemplated adoption of a "related child" among others by grandparents and great uncles and great aunts. The statutory differences for adoption of a "related child" are essentially procedural, and we find no different substantive standards or tests imposed by such provisions for adoption of a related child.

As noted by the guardian *ad litem,* the decree would support a conclusion that persons of the age of petitioners could never adopt a child. The court's rule or standard would seem to apply to the adopton of "related children" by persons of age and category of grandparents or great uncles, the statute notwithstanding.

The tenor of the decree makes the single factor, age, controlling over all others—not in terms of present factors and circumstances or even those of the near future, but upon the projections of time beyond the range of valid human prediction. We find no Illinois cases which have examined adoption upon this single issue. It is said, however, that in determining the welfare of the child, no single facts should be determinative. *In re Petition of Kollman* (Abst. 1956), 10 Ill.App.2d 336, 136 N.E.2d 629.

■■ The courts of review in several States have reviewed this issue and determined that the age of the adopting parents should not be the controlling factor. In *Williams v. Neumann* (Ct.App., Ky., 1966), 405 S.W.2d 556, the petitioning husband was 73 and the wife 51. There the evidence showed an opinion, as was the opinion of the court here, that adoption should be by persons of child-bearing age. The court reversed, holding that in the absence of statutory standards, if the facts justify adoption, age should not be a controlling factor. In *In re Adoption of Brown* (Fla.Sup.Ct. 1956), 85 So.2d 617, the petitioning husband was 57 and the wife 53. The State Welfare Board had recommended denial of adoption and the trial court so held. The Supreme Court reversed, stating that age without more should not bar adoption, particularly where the alternative was a further future proceeding for adoption. In *In re Duke* (Fla.Sup.Ct. 1957), 95 So.2d 909, the petitioning husband was 48 and the wife 63, and the child was two and one-half years old. The trial court had found that adoption was against

24

the best interests of the child because the petitioners were not of a suitable age. The reviewing court pointed out that the child would receive the tangible and intangibles of many good factors, and that possible error was reduced to a minimum. The decree of the trial court was reversed.

■■ Upon review of the sum of the particular factors in this case, we conclude that the trial court erred in determining that the sole factor of the age of the petitioners should be a bar to adoption.

The decree of the circuit court of McLean County is reversed and this cause is remanded to that court with directions to grant the petition.

Reversed and remanded with directions.

SMITH and CRAVEN, JJ., concur.