FRANCISCO ROQUE, M.D., Plaintiff-Appellant, *v.* ARTHUR F. QUERN, Director of the Department of Public Aid, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-1340

Opinion filed November 26, 1980.

1016

Gordon, Schaefer & Gordon, Ltd., of Chicago (Gilbert W. Gordon and Louis A. Varchetto, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Ellen P. Brewin, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Dr. Francisco Roque, appeals from an order of the circuit court under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) affirming an administrative agency's finding that he violated the licensing provision of the Illinois Dangerous Drug Abuse Act

(Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq*.). On appeal, he contends that: (1) the decision of the administrative agency was contrary to the manifest weight of the evidence; (2) section 14 of the Act (Ill. Rev. Stat. 1977, ch. 120, par. 120.14) is an unconstitutional delegation of legislative authority; and (3) certain portions of section 14 do not bear a reasonable relation to the purpose of the Act. We affirm the trial court. The pertinent facts follow.

On March 8, 1978, plaintiff was served with a "Notice of Intent to Terminate and Right to Hearing" as to his participation as a vendor of goods and services under the Medical Assistance Program of the Illinois Department of Public Aid. The department alleged that plaintiff, while treating medical assistance program patients at the Mohawk Medical Center, furnished medical services and prescriptions in excess of his patients' needs and of grossly inferior quality. The charges were later amended to include an additional charge alleging that he had rendered care to drug abusers without a proper license as required by the Dangerous Drug Abuse Act. Ill. Rev. Stat. 1977, ch. 91½, par. 120.14.

At the hearing the Department presented Dr. Elchanan Golan, who is employed as a consultant to review patient charts, interview Medical Assistance Program providers and help conduct on-site review of physicians and clinics when questions of quality of care arise. Dr. Golan testified that he conducted an on-site review of plaintiff's work at the Mohawk Medical Center. He stated that entries on the patients' charts reviewed showed similar continuing symptoms; sinus or nose problem, coupled with some sort of pain and anxiety. All patients on each visit were prescribed the same three drugs. On cross-examination, Dr. Golan admitted that he had not examined patients with long histories of drug abuse such as those seen by plaintiff, and further that his "experience" was not clinical experience but consisted of reviewing literature on other people's experiences, such as the Physician Desk Reference and medical books.

Plaintiff first testified as to his medical qualifications and honors. He then stated that he began work at the Mohawk Medical Center in September 1977 and that most of the patients he saw at Mohawk were of the lowest rank of the social economic system. He further indicated that approximately 95% of his patients at Mohawk were addicts and that they would "come only because of the triad of symptoms that is described as 'abstinence syndrome': which is anxiety, pain and nose trouble * * * [caused by] the withdrawal of heroin, morphine, or what have you * * *."

The records indicated that these patients were treated for a number of other ailments (*i.e.*, cough, skin problem, infection from needle marks, dandruff); however, his patients almost always had the same three symptoms of pain, nose trouble and anxiety. These patients were

prescribed the same medication in the same dosages. Plaintiff stated that he was treating patients at Mohawk for the symptoms and discomfort they were having as a result of their drug addiction, but not for the addiction itself because he knew that there was no cure. He indicated he would refer certain patients to rehabilitation centers for their addiction problems. He said he chose the drug combination at issue here because other doctors at Mohawk used it and reference to standard medical textbooks did not contraindicate their use for addicts. He denied treating any patient at Mohawk specifically for his drug addiction and further denied prescribing or giving any patient any drugs in excess of his particular needs.

Dr. Otto Bettag testified on behalf of plaintiff as an expert witness. He indicated that the drugs prescribed by plaintiff were proper and indicated for the objective findings in the diagnosis of the particular patients involved. Dr. Bettag stated that facilities licensed to treat drug addiction were primarily interested in the drug-addiction problem. It was his opinion that other complaints, unrelated to but as a result of drug addiction, would get optimum treatment from private doctors. Dr. Bettag concluded that the drugs in question were properly prescribed for the symptoms of these particular patients.

Dr. Philippe Benoit, a professor of pharmacology at the University of Illinois Medical Center, next testified on behalf of plaintiff. He testified that the drug dosages were certainly not excessive and were perhaps a little less than is sometimes normally used. These drugs were proper treatment and commonly used for the complaints of sinusitis, backache and anxiety. The combination of these three drugs would not be any more harmful for people who are addicted to alcohol or narcotics and would not produce any adverse effects beyond the commonly known ones which a physician would warn a patient about: sleepiness, drowsiness, and a little lethargy.

The hearing officer concluded that plaintiff had violated the licensing provisions of the Dangerous Drug Abuse Act by providing services without a license to a clientele 95% of whom were drug abusers coming to Mohawk for treatment of abstinence syndrome, which established the basis for the termination of his participation as Medical Assistance Program vendor under section 4.61(i) of the Illinois Department of Public Aid rules. She further concluded that plaintiff's treatment of these patients cannot be judged to be "grossly inferior" or that he prescribed these drugs in excess of his patients' needs. She recommended that his participation as a vendor in the Medical Assistance Program be terminated.

Plaintiff filed a request for a rehearing, which was denied. He then commenced administrative review proceedings in the circuit court. The

circuit court entered an order affirming the administrative decision finding that it was not contrary to the manifest weight of the evidence.

OPINION

Plaintiff asserts that the decision of the administrative agency was contrary to the manifest weight of the evidence. Additionally, he argues that the hearing officer interpreted section 14 of the Act to mean that no physician, when a significant portion of patients are drug addicts, can treat or service a drug addict for any ailment or affliction without a license from the Dangerous Drug Abuse Commission, even if such physician does not treat the patient for the addiction problem.

Section 14 of the Act provides in pertinent part that:

"(a) No person shall establish, open, conduct, operate or maintain a facility or provide services for the treatment, care, rehabilitation, training or education of addicts and abusers of dangerous drugs without first obtaining a license from the Commission.

\* \* \*

(e) No person who has a license to practice medicine in all its branches from the Department of Registration and Education, pursuant to the Medical Practice Act, shall be required to obtain any license under this Section for any medical services conducted during the course of regular practice, except if such practice is significantly devoted to the treatment, care, rehabilitation, training or education of addicts and abusers of dangerous drugs." Ill. Rev. Stat. 1977, ch. 91½, par. 120.14.

■■ Plaintiff also contends that such a construction of the statute is inconsistent with the specific legislative declaration, which states:

"It is the public policy of this State that the human suffering and social and economic loss caused by addiction to controlled substances and the use of cannabis are matters of grave concern to the people of the State. It is imperative that a comprehensive program be established and implemented through the facilities of the State, counties, municipalities, the Federal Government, and local and private agencies to prevent such addiction and abuse; to promote research on the effects and consequences of the abuse of controlled substances and use of cannabis; to study the problem of the abuse of controlled substances and use of cannabis in this State and inform the public as to its findings; and to provide diagnosis, treatment, care, and rehabilitation for controlled substance addicts to the end that these unfortunate individuals may be restored to good health and again become useful citizens in the community." (Ill. Rev. Stat. 1977, ch. 91½, par. 120.2.)

1020

We disagree with plaintiff's contention.

The hearing officer at the conclusion of the evidence determined that plaintiff's patients, of whom 95% were drug addicts, came to Mohawk for treatment of withdrawal symptoms. As such, she determined that plaintiff's practice fell within the purview of the Act. Her findings of fact and recommendations were adopted by the Director of the Illinois Department of Public Aid.

A court in an administrative review proceeding should give due deference to factual determinations of agencies for purposes of administrative review (*Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130, 395 N.E.2d 555; *Alexander v. Civil Service Com.* (1979), 75 Ill. App. 3d 507, 394 N.E.2d 516), as such findings and conclusions are held to be *prima facie* true and correct (Ill. Rev. Stat. 1977, ch. 110, par. 274). On administrative review, the court's function is to determine whether the agency's findings are supported by substantial evidence. (*Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 396 N.E.2d 1321.) If there is substantial evidence to support an agency's decision, the decision must be affirmed. *Talman v. Department of Registration and Education* (1979), 78 Ill. App. 3d 450, 397 N.E.2d 151.

We do not find the administrative agency decision to be against the manifest weight of the evidence. Plaintiff himself admits that 95% of his clientele were drug addicts and would only come to Mohawk because of the triad of symptoms of anxiety, pain and nose trouble. He acknowledged that such symptoms were caused by withdrawal of heroin, morphine, and other drugs. He further acknowledged that he was treating these patients for the suffering and discomfort they were having as a result of their drug addiction and he always prescribed the same combination of three drugs in the same dosage for them. While plaintiff asserts he did not attempt to cure or "treat" addicts as defined in the Act,[1] his actions contravened the very purpose of the Act to establish a comprehensive program to prevent addiction and abuse and to provide treatment, care and rehabilitation so that these individuals could return to the community in a useful capacity. In line with this purpose, the Act required physicians whose practice is significantly devoted to the treatment, care, etc., of addicts or abusers to secure a license from the Commission, which plaintiff acknowledges he did not do.

■■ Even if plaintiff asserts he did not "treat" addicts or abusers as defined in the statute, he did provide medical "care" and more specifically medical "care" for their drug related problems. Such "care" is also proscribed by the statute. (See Ill. Rev. Stat. 1977, ch. 91½, par. 120.14(a), (e).) There can be no question that a 95% clientele of addicts and abusers

[1] "Treat"means the rehabilitation of addicts in a manner approved by the Commission. Ill. Rev. Stat. 1977, ch. 91½, par. 120.3—7.

constitutes a significant portion of plaintiff's practice. Thus, plaintiff's very own admissions indicate a violation of the Act. In order to conclude that the administrative agency's findings are against the manifest weight of the evidence, we must be satisfied that an opposite conclusion is clearly evident. (*Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 396 N.E.2d 1321.) This we are not convinced of and hold plaintiff was required to secure a license as provided by the statute.

Plaintiff next contends that section 14 of the Dangerous Drug Abuse Act is an unconstitutional delegation of legislative authority. This argument is without merit.

Plaintiff argues that the term "significantly devoted" (Ill. Rev. Stat. 1977, ch. 91½, par. 120.14(e)) is incomplete, vague and uncertain. He asserts the statute lacks sufficient standards for the Commission to follow for determining to whom the licensing requirement applies.

■■ Our supreme court has stated that intelligible standards or guidelines must accompany legislative delegations of power. (*Thygesen v. Callahan* (1979), 74 Ill. 2d 404, 385 N.E.2d 699; *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 361 N.E.2d 875.) A legislative delegation is valid if it sufficiently identified:

"(1) The *person* and *activities* potentially subject to regulations;

(2) the *harm* sought to be prevented; and

(3) the general *means* intended to be available to the administrator to prevent the identified harm." *Stofer*, 68 Ill. 2d 361, 372, 369 N.E.2d 875, 879.

■■ Applying this test to the legislation in question, we find no unconstitutional delegation of legislative authority. The first element of the analysis is clearly met. The activity subject to regulation is medical practice significantly devoted to the treatment, care, rehabilitation, training or education of addicts. Plaintiff cannot argue that the term "significantly" is unconstitutionally vague as it applies to him since by his admissions his clientele consists of 95% drug addicts and abusers and he treated them primarily for drug-related problems. Thus, the plaintiff's practice clearly fell within the mandate of the statute. A court will not determine the constitutionality of provisions of an act which do not affect the parties to the cause under consideration since one who would attack a statute on constitutional grounds must bring himself within the class to whom the law is unconstitutional. (*Schiller Park Colonial Inn, Inc. v. Berg* (1976), 63 Ill. 2d 499, 349 N.E.2d 61.) As to this plaintiff, section 14(e) is neither vague, uncertain or indefinite.

The harm sought to be prevented by the legislation is drug addiction and means available is the establishment and implementation of a comprehensive drug program which includes licensing of physicians who significantly treat, care, etc., drug addicts and abusers by the Commis-

sion. We believe the elements of the three-prong test for determining whether a valid legislative delegation of authority exists have been made in this instance.

Plaintiff further argues that the terms "treatment" and "care" in the statute provision (Ill. Rev. Stat. 1977, ch. 91½, par. 120.14(e)) are similarly unconstitutionally vague. We disagree.

In *Association of American Physicians & Surgeons v. Weinberger* (N.D. Ill. 1975), 395 F. Supp. 125, *aff'd per curiam* (1975), 423 U.S. 975, 46 L. Ed. 2d 299, 96 S. Ct. 388, plaintiffs argued that numerous words and phrases contained in the statute were vague and uncertain "that plaintiff must necessarily guess at their meaning." The court stated:

> "The test in determining whether or not a statute is unconstitutionally vague is whether men of common intelligence must necessarily guess at its meaning. Due to the particular application of this statute to physicians and other practitioners, the Court must also consider whether members of the medical profession must necessarily guess at the meaning of phrases set forth in the statute, such as 'medically necessary,' 'professionally recognized health care standards,' and 'proper care.' " 395 F. Supp. 125, 138.

The court did not find the language of the challenged legislation vague or uncertain. A similar issue was raised in *Agustin v. Quern* (N.D. Ill. 1978), 461 F. Supp. 441, *aff'd* (7th Cir. 1979), 611 F.2d 206. The court there also found the standards to which a medicaid vendor was held by the Director of the Illinois Department of Public Aid not void for vagueness.

■■ Plaintiff, as a medical doctor, could surely comprehend the terms in the statute as applicable to physicians and should have been aware that such conduct fell within the purview of the statute when he sought to relieve addicts and abusers of their suffering from withdrawal symptoms. As such, plaintiff cannot now argue that he necessarily had to guess as to what the legislature intended. We conclude that there is sufficient warning as to the proscribed conduct when measured by the common understanding and application of this statute to physicians.

Plaintiff's final argument is that the statute is unconstitutionally vague and portions of it bear no reasonable relation to the purpose of the Act. Specifically, plaintiff suggests that section 14(e) of the Act does not provide a reasonable method to accomplish the objective of the statute. Plaintiff asserts that the number of physicians from whom the addict can seek treatment or care for symptomatic and unrelated problems of the addiction is limited by the statute interpretation. As such, the addict very likely will seek additional narcotics, and thus, he states, the purpose of the Act is frustrated. We reject this argument.

The intent of the legislature in enacting this statute is to establish a comprehensive program for tackling the drug abuse problem and to restore addicts and abusers to useful citizenry in the community. In order to establish such a comprehensive program, the Commission requires physicians whose practice is significantly devoted to the treatment, care, etc., of addicts or abusers to obtain a special license. We have previously discussed the vagueness argument plaintiff raised in regard to certain terms in section 14(e). And through plaintiff's own admissions 95% of his patients were addicts and abusers whom he treated mainly for withdrawal symptoms. As such, these patients are not likely to seek out treatment facilities if drugs or drugs to relieve withdrawal symptoms are available. The objective of the Act would instead be frustrated if physicians such as plaintiff could circumvent the Act's license requirement through their practices. The Act does not require a physician to obtain a license if his services are unrelated to the patient's drug problem. It is the reviewing court's duty to interpret the statute in such a manner as to promote its essential purpose and to avoid, if possible, a construction which would raise doubts as to its validity. *Stubblefield v. City of Chicago* (1971), 48 Ill. 2d 267, 269 N.E.2d 504.

The Dangerous Drug Commission seeks a consistent and controlled approach to combating and preventing drug abuse through the licensing requirement. Plaintiff's practice falls clearly within the statute's mandate. We, therefore, conclude that the provision in question does provide a reasonable method to accomplish the end sought to be attained by the Act.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.