*In re* PETITION OF K.M. *et al.*, to Adopt Olivia M., a Minor, Petitioners-Appellants.—*In re* PETITION OF K.L. *et al.*, to Adopt Michael M. *et al.*, Minors, Petitioners-Appellants.

First District (2nd Division) Nos. 1—95—0161, 1—95—0238 cons.

Opinion filed July 18, 1995.

Timothy J. Miller and Sandra Raitt, both of Novack & Macey, Joseph T. Monahan, of Monahan & Cohen, Geoffrey R. Kors and Lauren L. McFarlane, both of the Roger Baldwin Foundation of ACLU, Inc., Patricia M. Logue, of Lambda Legal Defense and Education Fund, Inc., and Rosemary S. Mulryan, of Mulryan & York, all of Chicago, for appellants.

Edward J. O'Connell, of Chicago, guardian *ad litem.*

Annette R. Appell and Steven A. Drizin, both of Northwestern University Legal Clinic, of Chicago, for *amicus curiae.*

JUSTICE DiVITO delivered the opinion of the court:

In adoption proceedings in the circuit court of Cook County, unmarried cohabitors of the same sex were held not to have standing to bring petitions to adopt under the terms of the Illinois Adoption Act (the Act) (750 ILCS 50/0.01 *et seq.* (West 1994)). In each case, one of the petitioners is the natural mother or the adoptive mother of the minors the women seek to adopt jointly.

## K.M. AND D.M.

On March 14, 1994, Judge Stephen Yates issued a memorandum opinion and order in an unrelated case in the circuit court of Cook County finding that an unmarried lesbian couple could join in a petition to adopt. (*Petition of E.S.* (Cir. Ct. Cook Cty., March 14, 1994), No. CoA 1202.) No appeal was taken from this order. On March 16, 1994, K.M. and D.M., an unmarried lesbian couple, filed a joint petition to adopt three-year-old Olivia M., the natural daughter of K.M. A summons was issued on the same date.

On May 17, 1994, the circuit court issued an interim order which granted temporary custody to K.M. and D.M., appointed a guardian *ad litem* (the guardian) (the same guardian who had been appointed in *Petition of E.S.*), and ordered the Department of Supportive Services (DSS) to perform an investigation and provide a recommendation as to the suitability of K.M. and D.M. to adopt. Summons was served on Olivia on that day. On June 10, 1994, the guardian filed an answer on her behalf.

On May 17, 1994, K.M. and D.M. filed an affidavit of service by publication upon the unknown biological father (K.M. had been artificially inseminated) in accordance with the Act. (750 ILCS 50/7(A) (West 1994).) On June 3, 1994, K.M. and D.M. filed a certificate of publication of notice to the unknown father. On July 8, 1994, the

circuit court entered a default order against the unknown father, declaring him unfit and terminating his parental rights.

On July 3, 1994, amendments to the Act took effect. (Pub. Act 88—550, art. 9, § 975, eff. July 3, 1994.) Those amendments stated that they applied to all cases pending on that date.

On July 26, 1994, the guardian filed a motion to dismiss the adoption petition on the grounds that K.M. and D.M. lacked standing to file the petition. The same grounds had been rejected by Judge Yates in *Petition of E.S.* On the same date, the guardian filed an identical motion to dismiss in the other case involved in this appeal (see below). On August 29, 1994, an order was entered consolidating this case with the other case in the circuit court for the limited purpose of briefing and ruling on the guardian's identical motions to dismiss the two cases.

On September 13, 1994, K.M. and D.M. filed their memorandum in response to the motion to dismiss the petition for adoption and for other relief. No reply memorandum was filed by the guardian.

K.M. and D.M. had supplied DSS with all documents necessary for its investigation. DSS submitted a final recommendation to the circuit court on November 16, 1994, that supported the proposed adoption.

On November 28, 1994, a hearing was held on the motions to dismiss and on whether, if standing existed, the petitions to adopt were in the children's best interests. Following the hearing, the court ruled that K.M. and D.M. lacked standing to file the petition. The oral ruling was followed with a written judgment order, dated December 5, 1994, explaining the decision in greater detail.

On December 12, 1994, an agreed order was entered leaving the interim order of custody in effect during the pendency of any properly perfected appeal. On the same date, K.M. and D.M. filed a motion to reconsider the judgment and seeking a ruling on their alternative argument that the petition could be considered as a petition by D.M. as an individual person, joined by K.M. so as not to terminate her parental rights. On December 28, 1994, the motion was denied following a hearing.

K.M. and D.M. filed a timely notice of appeal on January 24, 1995.

## K.L. AND M.M.

On April 4, 1994, K.L. and M.M., another unmarried lesbian couple, filed a joint petition to adopt Michael M. (three years old) and David M. (one year old) in the circuit court of Cook County. David is K.L.'s natural son (she was artificially inseminated), and Michael is

K.L.'s adoptive son, the adoption having occurred on January 17, 1992. Summons was served on the same day as the filing, and an interim order was entered granting temporary custody to K.L. and M.M. The court appointed the same guardian as in the case of K.M. and D.M., and ordered DSS to perform an investigation and provide a recommendation as to the suitability of K.L. and M.M. to adopt.

On April 18, 1994, K.L. and M.M. filed an affidavit of service by publication upon the unknown biological father of David. On May 9, 1994, they filed a certificate of publication of notice to the unknown father. No default order appears in the record.

On April 28, 1994, the guardian filed an answer on behalf of Michael, and on June 29, 1994, the guardian filed an answer on behalf of both Michael and David.

On July 26, 1994, K.L. and M.M. filed a motion to use initials and pseudonyms. The motion was granted on the same date. Also on July 26, the guardian filed a motion to dismiss the adoption petition on the grounds that an unmarried couple lacked standing. As stated above, an order was entered consolidating this case with the case of K.M. and D.M. for the limited purpose of briefing and ruling on the guardian's identical motions to dismiss. K.L. and M.M. filed their response to the guardian's motion on September 13, 1994, with 21 exhibits. No reply memorandum was filed by the guardian.

DSS filed its report with the court on October 11, 1994, recommending the proposed adoption.

On November 28, 1994, a hearing was held on the motions to dismiss and on whether, if standing existed, the petitions to adopt were in the children's best interests. Following the hearing, the court ruled that K.L. and M.M. lacked standing to file the petition. The oral ruling was followed with a written judgment order, dated December 5, 1994, explaining the decision in greater detail.

On December 14, 1994, K.L. and M.M. filed a motion to reconsider the judgment and to ask for a ruling on their alternative argument that the petition could be considered as a petition by M.M. as an individual person, joined by K.L. so as not to terminate her parental rights. On December 28, 1994, the motion was denied following a hearing.

K.L. and M.M. filed a timely notice of appeal on January 11, 1995.

Although the two cases were not consolidated, they were set for briefing and oral argument simultaneously by this court.

These appeals require that we construe the text of the Act. The circuit court's construction is not entitled to deference and must be reviewed *de novo*. (*S.B. Lexington, Inc. v. Near North Insurance*

*Agency, Inc.* (1993), 244 Ill. App. 3d 1023, 1030, 614 N.E.2d 234, 238.) Neither case presents any contested factual issue.

The parties agreed that the sexual orientation of the petitioners was not a bar to the proposed adoptions. Nothing in the Act suggests that sexual orientation is a relevant consideration, and lesbians and gay men are permitted to adopt in Illinois. The circuit court professed the same point of view. These views are in accord with the appellate court's prior ruling in *In re Marriage of Pleasant* (1993), 256 Ill. App. 3d 742, 743, 628 N.E.2d 633, 635, and the cases cited therein that sexual orientation is not relevant to visitation rights, and with research submitted by petitioners on the subject of lesbian and gay parents and their children. Sexual orientation is simply not an issue in these cases, which turn exclusively upon this court's construction of the language of the Act.

The fundamental purpose of statutory construction is to give effect to the legislature's intent, including the evils to be remedied and purposes to be served by the enactment. The appellate court stated in 1990 that a "court has no right to read into the statute words that are not found there either by express inclusion or by fair implication." (*American Ambassador Casualty Co. v. City of Chicago* (1990), 205 Ill. App. 3d 879, 884, 563 N.E.2d 882, 886.) A statute's language is the best indicator of legislative intent, and when a statute's language is clear and unambiguous, a reviewing court should not read in exceptions, limitations, or conditions. *Business & Professional People for Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207, 585 N.E.2d 1032, 1044.

■ Section 20 of the Act states that "This Act shall be liberally construed, and the rule that statutes in derogation of the common law must be strictly construed shall not apply to this Act." (750 ILCS 50/20 (West 1994); see also *In re Joseph B.* (1994), 258 Ill. App. 3d 954, 963, 630 N.E.2d 1180, 1187 (substantial compliance with adoption laws generally sufficient).) While no Illinois court has explicitly defined what "liberally construed" means, there are some generally accepted guidelines that this court may follow.

"Liberal" is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under strict construction. As the Texas Court of Civil Appeals put it in 1931:

> "We are of the opinion that the term 'liberal construction' means to give the language of a statutory provision, freely and consciously, its commonly, generally accepted meaning, to the end

that the most comprehensive application thereof may be accorded, without doing violence to any of its terms." *Maryland Casualty Co. v. Smith* (Tex. Civ. App. 1931), 40 S.W.2d 913, 914.

Rules of strict or liberal construction have no application where the language of a statute is clear. (*Anderson v. City of Park Ridge* (1947), 396 Ill. 235, 254, 72 N.E.2d 210, 219.) Statutes should be interpreted so that the manifested purpose or object of the statute can be accomplished. (*Pullman Co. v. Cummins* (1957), 10 Ill. 2d 454, 463, 140 N.E.2d 713, 719.) With reference to these principles, a statute is liberally construed when its letter is extended to include matters within the spirit or purpose of the statute. Construction pursuant to the ancient doctrine of the equity of the statute, where cases within the reason although not within the letter of a statute are embraced by its provisions and cases not within the reason though within the letter are excluded, is another way of arriving at a liberal construction. *Zelkovich v. Industrial Comm'n* (1956), 8 Ill. 2d 146, 150, 133 N.E.2d 300, 302; *In re Estate of Abell* (1946), 395 Ill. 337, 346, 70 N.E.2d 252, 256; *Karlson v. Murphy* (1944), 387 Ill. 436, 443, 56 N.E.2d 839, 842.

If a statute is susceptible of more than one construction, it should, if possible, be given the construction which will effectuate or carry out its purpose or object. (*Scofield v. Board of Education of Community Consolidated School District Number 181* (1952), 411 Ill. 11, 15, 103 N.E.2d 640, 642; *Roque v. Quern* (1980), 90 Ill. App. 3d 1015, 1023, 414 N.E.2d 161, 167.) This should be so even when such construction is not within the strict literal interpretation of the statute. (*Scott v. Freeport Motor Casualty Co.* (1942), 379 Ill. 155, 162, 39 N.E.2d 999, 1002; *U.S. Industrial Alcohol Co. v. Nudelman* (1940), 375 Ill. 342, 344, 31 N.E.2d 594, 596.) Courts are to construe the details of an act in conformity with its dominating purpose. (*People v. Gibbs* (1952), 413 Ill. 154, 163, 108 N.E.2d 446, 451.) The provisions of an act emphasizing a particular purpose are to be liberally construed to the end that such a purpose be effectuated. (*People ex rel. Bowen v. Hughes* (1938), 370 Ill. 255, 258, 18 N.E.2d 453, 455; *Green v. Black* (1933), 352 Ill. 623, 628, 186 N.E. 462, 463.) Courts, however, must avoid reading statutory language too literally or too broadly, and must try to garner what the legislature intended. *Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 716, 364 N.E.2d 597, 599, *aff'd* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.

■■ Section 2 of the Act sets forth who may adopt a child in Illinois and applies to all adoption petitions:

"(a) A reputable person of legal age and of either sex, provided that if such person is married, his or her spouse shall be a party

to the adoption proceeding, including a husband or wife desiring to adopt a child of the other spouse, in all of which cases the adoption shall be by both spouses jointly." (750 ILCS 50/2(A)(a) (West 1994).)

All references to "his or her spouse," "a husband or wife," or "both spouses" occur after the phrase "provided that if such person is married," which clearly indicates that they refer *only* to a person who is married. Nothing additional is said about a reputable person of legal age who is not married.

The Act expressly provides for plural construction to be given to singular terms: "The singular includes the plural and the plural includes the singular *** as the context of this Act may require." (750 ILCS 50/1(G) (West 1994).) The general rules of statutory construction in Illinois also include a "mandate which requires that statutory language used in the singular be extended to include the plural." *Finley v. Finley* (1979), 75 Ill. App. 3d 89, 93, 393 N.E.2d 1060, 1062-63, *aff'd in part & rev'd in part on other grounds* (1980), 81 Ill. 2d 317, 410 N.E.2d 12; see also 5 ILCS 70/1.03 (West 1994) (applicable to all statutes in Illinois: "Words importing the singular number may extend and be applied to several persons or things ***").

Further, the Act defines a "related child" as follows:

" 'Related child' means a child subject to adoption where either or both of the adopting parents stands in any of the following relationships to the child by blood or marriage: parent, grandparent, brother, sister, step-parent, step-grandparent, step-brother, step-sister, uncle, aunt, great-uncle, great-aunt, or cousin of first degree." 750 ILCS 50/1(B) (West 1994).

The circuit court in this case held that a plural interpretation of the word "person" was limited to married couples:

"[A]ll of the previous Adoption Acts, and the present Act as well, require standing of petitioners, either as single unmarried persons, (male or female) or as husband and wife, jointly as spouses. Since June 30, 1905, when common-law marriages have been abrogated in Illinois, even such committed relationships no longer have viable standing unless consummated prior to June 30, 1905. This we believe indicates [the] legislature's preference for licensed ceremonial marriages.

Since male/female common-law relationships no longer have standing to adopt, and persons now must be validly married in a civil or religious ceremony, pursuant to a marriage license, it [is] quite obvious that a simulated religious marriage by a same-sex couple—as was K.L.'s and M.M.'s—does not establish standing under the Act to petition for adoption.

We have been unable to glean in reviewing the various Adop-

tion Act enactments in Illinois, any indication why the Illinois Legislature excluded by including only specified 'person' or 'persons' as having standing. Conjecturally, perhaps the legislature in its social policy wisdom, believed that only lawfully married couples should have standing to adopt jointly, possibly believing that only certain presumed family structures could provide the kind of love, nurture, role-model, stability and long-term lasting environment for children which it intended. We do not deny that some same-sex (male or female) relationships could provide a good environment for children—some of which might even be more lasting and stable than that of some married couples, who breakup by separations and dissolutions, as statistics indicate. Nevertheless, we believe it is up to the legislature to change social policy and not for any court, by construing and reading-in meaning and intent into the Adoption Act, that was not intended by the legislature.

### INTERPRETATION OF 750 ILCS 50/1—G

Although the word 'person' is subject to plural interpretation, under 750 ILCS 50/1—G—(which petitioners argue brings them within the scope of having standing) it is clear that such plurality is intended to apply only to husband and wife (spouses), relationships 'as the context of this Act may require', and does not apply to any unmarried persons, living together as if lawfully married who wish to adopt jointly. If plurality meaning were intended to include same-sex persons living together or even unmarried male and female couples living together as a family, as petitioners contend, then logically this plurality interpretation of Section G could arguably be extended to include more than just two persons of any sex in any kind of relationship as having standing to adopt. Such an extended interpretation, of Section G, arguably might open the door for joint adoptions by any number and groups of persons, including cult groups, who might consider themselves a family unit."

Rather than allowing broader coverage or more inclusive application of statutory concepts, the circuit court's interpretation required more limited coverage and less inclusive application. The court thus interpreted the Act to apply to fewer rather than to more situations, indicative of a strict rather than a liberal construction. In doing so, the court ignored the Act's mandate that it be construed liberally. The court did so even while acknowledging that "the series of statutes and amendments, from the time of the first Adoption Act in 1867, have never expressly or by inference indicated that two persons of the same-sex do not have standing to petition." Further, the court agreed with what the guardian explicitly stated was a "more conservative construction of the statute."

In contrast, the circuit court in *Petition of E.S.*, referred to above, held:

> "Therefore, the Court has concluded that in the context of this case, the word 'person' as set forth in Section 2 is subject to a plural interpretation providing for an adoption brought by two unmarried individuals, including a parent of the child to be adopted."

Such a construction follows the guidelines for liberal construction recited above.

■ The definition of a "related child" cited above contemplates a situation in which only one—"either"—of the adopting parents is related to the child "by blood *or marriage.*" If only one of the adopting parents is related by blood or marriage, the second adopting parent clearly need not be so related. If, however, as the circuit court held, only married couples can adopt, then *both* adopting parents will *always* be related to the child by blood or marriage. Such an interpretation would render meaningless the statute's use of the term "either" in section 1(B). (750 ILCS 50/1(B) (West 1994).) The fact that the statute provides that "either" adopting parent may be related to the child by blood or marriage necessarily implies that unmarried couples can adopt; this is the only reading of the statute that makes the use of the term "either" meaningful. See *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 365, 487 N.E.2d 937, 942 ("[s]tatutes should, if possible, be construed so that no term is rendered superfluous or meaningless").

Liberal construction of the language of the Act cited above would allow adoption by two persons where *either* or *both* stands in *any* of the listed relationships to the child. A brother and sister, for example, would have standing to petition for adoption, as would two unmarried first cousins (of either sex), or (as in these cases) one parent of the child (of either sex) and that parent's unmarried partner (of either sex). In each of these cases, and in many more that could be envisioned, two unmarried persons are enabled by the Act to join to adopt a child related to either or both.

When the term "shall" is used in a statute, it generally indicates a legislative intent to make the provision mandatory. (*Puss N Boots, Inc. v. Mayor's License Comm'n* (1992), 232 Ill. App. 3d 984, 986-87, 597 N.E.2d 650, 652-53.) The Act clearly states that it "*shall* be liberally construed." (Emphasis added.) (750 ILCS 50/20 (West 1994).) The circuit court acknowledged the rule of liberal construction, but held that it did not apply in resolving jurisdictional issues:

> "We rule that such liberal construction, does not intend to include within its purview standing of petitioners who have not been

expressly or impliedly contemplated, intended, or included by provisions of the Act."

While it is fundamental that a statute may not be strictly construed for some purposes and liberally construed for others (see, *e.g., Prime Construction Co. v. Seattle-First National Bank* (1977), 616 Wash. App. 674, 558 P.2d 274), the history of the handling of standing to petition to adopt would require liberal construction in any case.

The Illinois Supreme Court, in *Watts v. Dull* (1900), 184 Ill. 86, 56 N.E. 303, held with respect to the 1874 Act that jurisdiction, or standing, must be strictly construed. (*Watts*, 184 Ill. at 91, 56 N.E. at 305.) That court, however, later relaxed the rules of interpretation governing standing under the Act. In *Hopkins v. Gifford* (1923), 309 Ill. 363, 141 N.E. 178, the court applied a liberal construction to the Act's jurisdictional requirements. (*Hopkins*, 309 Ill. at 368, 141 N.E. at 180.) Since *Hopkins*, the General Assembly has amended the Act to adopt a statutory rule of liberal construction. *In re Petition of Simaner* (1959), 15 Ill. 2d 568, 575-76, 155 N.E.2d 555, 559.

■■ ■ Further, the Act mandates that "[t]he best interests and welfare of the person to be adopted shall be of paramount consideration in the construction and interpretation of this Act." (750 ILCS 50/20a (West 1994).) Elsewhere, the Act states that "[t]he welfare of the child shall be the prime consideration in all adoption proceedings." (750 ILCS 50/15 (West 1994).) While this language does not empower a court to ignore express statutory requirements, it does require that a court should consider, when resolving statutory ambiguities, whether a proposed interpretation advances the best interests of the child. (See, *e.g., Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 483 N.E.2d 512 (relying on the best interests of the child, supreme court holds grandparents retain visitation rights after termination of their child's parental rights); *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293 (relying on best interests of child, supreme court holds petitioners otherwise qualified to adopt not barred because of difference in religious background).) A construction that excludes all unmarried persons, regardless of sex, from petitioning to adopt jointly, does not give paramount consideration to the best interests and welfare of the persons to be adopted. Further, when the circuit court held that " 'standing' is a fundamental threshhold issue, that first must be addressed by the court, before any consideration can be given or adjudication made of the 'best interests' of [children]," it ignored the explicit requirement of the Act that the "welfare of the person to be adopted shall be of paramount consideration in the construction and interpretation of this Act." 750 ILCS 50/20a (West 1994).

We agree with what the circuit court stated regarding the issue of jurisdiction in *Petition of E.S.*:

> "Although the GAL, has argued that the jurisdictional provisions of the Act cannot be subject to construction in conjunction with the best interest provisions of Sections 15 and 20a, the Court has concluded to the contrary.

> * * *

> Pursuant to Sections 15 and 20a, the legislature directs the Court to look to the welfare and best interests of the child for the interpretation of its enactment. *** In this statutory evaluation, the Court has determined that in this case the interpretive directions of Section 20a, and the overall goal of the Act contained in Section 15, as set forth by the legislature, must prevail in an evaluation of legislative purpose."

Liberal construction, focused on the best interests of the children, is what the statute calls for, even in the area of standing. When the circuit court ignored the mandate of the statute, it erred.

At least twice the appellate court has relied upon the "related child" definition in the Act, upon which petitioners in these cases rely, to forestall attempts to prevent entire classes of persons from petitioning to adopt. In *In re Adoption of Ruiz* (1987), 164 Ill. App. 3d 1036, 518 N.E.2d 436, *appeal denied* (1988), 121 Ill. 2d 570, 526 N.E.2d 840, the circuit court held that a child's grandparents could not petition to adopt a child whom others had already petitioned to adopt. The appellate court, relying upon the "clarity" of the "related child" definition cited above, which expressly includes grandparents, reversed, holding itself bound by the statutory language. (*Ruiz*, 164 Ill. App. 3d at 1038-39, 518 N.E.2d at 438.) In a special concurrence, one judge stated:

> "[I]t is altogether clear that the legislature has granted to grandparents not only the right to adopt a grandchild, but it has also exempted them from the 30-day [filing requirement of the Act]. Accordingly, I have not the organs to perceive the reasoning of the respondents herein that the 'petitioners have no right to file their petition to adopt ***.' " *Ruiz*, 164 Ill. App. 3d at 1045, 518 N.E.2d at 442 (Scariano, P.J., specially concurring).

In *Madsen v. Chasten* (1972), 7 Ill. App. 3d 21, 286 N.E.2d 505, the circuit court denied a petition to adopt based solely upon the ages (53 and 58) of the petitioners. The court stated that it would be "unnatural" to approve such a family form. The appellate court noted that "the decree would support a conclusion that persons of the age of petitioners could never adopt a child." (*Madsen*, 7 Ill. App. 3d at 23, 286 N.E.2d at 506.) Relying upon the "related child" provisions of the Act, the court reversed:

"We note that *** the [Act] contemplated adoption of a 'related child' among others by grandparents and great uncles and great aunts. ***

*** The court's rule or standard would seem to apply to the adoption of 'related children' by persons of age and category of grandparents or great uncles, the statute notwithstanding." *Madsen*, 7 Ill. App. 3d at 23, 286 N.E.2d at 506.

Additionally, in construing language in section 15 of the Act, requiring courts to give custody through adoption "whenever possible" to petitioners of the same religious belief as the child, our supreme court held there must be an "unequivocal" indication of legislative intent to abandon the best interests of the child standard before it would limit who could be an adoptive parent. *Cooper*, 10 Ill. 2d at 273, 140 N.E.2d at 297.

*Ruiz, Madsen,* and *Cooper* are examples of Illinois courts applying liberal construction to the language of the Act in consideration of the best interests of the persons to be adopted. Similar consideration in these cases leads inevitably to the interpretation of section 2 that petitioners request.

While it must be acknowledged, as the circuit court fears, that such an interpretation of the Act would in fact give standing to petition to any group considering itself a family where one or more of the members of the group were related to the child or children to be adopted, the circuit court retains the safeguard of evaluating whether the granting of such a petition would be in the best interests of the child or children. Such a safeguard will prevent adoption of any child by a "cult group" where such adoption would not be in the child's best interests. In the cases before us, the guardian is on record as agreeing that construction of the Act in a manner that would permit these adoptions would be in the best interests of the children to be adopted, and the circuit court also agreed.

In its construction of the Act, the circuit court placed great weight on its text and its amendments dating back to the nineteenth century. The court found it significant that the statutory reference to "person" has remained singular and largely the same over the years. That the language in the statute has remained unchanged (and uninterpreted) over the years, however, tells the court nothing about what the language means. To our knowledge, the opinion in *Petition of E.S.* was the first to grapple with the meaning of the word "person" in the Act; the circuit court's memorandum opinion in this case was the second. That they came to opposite conclusions is not surprising, given the issue involved.

The court in these cases failed to give meaningful consideration

to the 1959 amendments to the Act which adopted the singular/plural construction rule discussed above (750 ILCS 50/1(G) (West 1994)) and which created the concept of "related child" adoptions (750 ILCS 50/1(B) (West 1994)). The court did not mention the "related child" provisions, and stated as a conclusion that it "appears clearly evident" that the singular/plural construction rule "applies only to husband and wife, when they are joint petitioners [because t]his is the first time such amplification of these terms appears in the Adoption Act."

The rule in Illinois, however—and the plain terms of the prior 1945 Act—had long been that a husband and wife must petition jointly to adopt. (See, *e.g.*, *Watts*, 184 Ill. at 92, 56 N.E. at 305.) The term "person" had always been given a plural construction to accomplish that result. To limit the singular/plural construction amendment to that situation would inappropriately make the statutory language superfluous, a result that is to be avoided in construing statutes. (*Niven*, 109 Ill. 2d at 365, 487 N.E.2d at 942.) As an amendment to a statute, the General Assembly was presumed to be creating new law in passing the singular/plural rule of construction, not engaging in a meaningless act. *Niven*, 109 Ill. 2d at 365, 487 N.E.2d at 942.

 It is far more likely that the singular/plural rule of construction was intended to prevent overly narrow statutory construction and to give effect to the simultaneously enacted "related child" amendments. Read separately or together, these provisions when liberally construed accord standing to petitioners other than single persons or married couples. The circuit court erred in failing to consider them in its analysis.

As the circuit court recognized, many other jurisdictions have approved adoptions by unmarried couples of either sex. These cases (collected in the record), while not controlling, are entitled to respect (*Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 275, 140 N.E.2d 293, 297) and were relied upon by the court in *Petition of E.S.*

The Supreme Judicial Court of Massachusetts approved adoptions by lesbian couples in *Adoption of Tammy* (1993), 416 Mass. 205, 619 N.E.2d 315. The Massachusetts statute is similar to the Act in that it allows married couples or "[a] person of full age" to petition to adopt. The court held:

> "There is nothing on the face of the statute which precludes the joint adoption of a child by two unmarried cohabitants such as the petitioners. *** Although the singular 'a person' is used, it is a legislatively mandated rule of statutory construction that 'words importing the singular number may extend and be applied to sev-

eral persons' unless the resulting construction is 'inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute.' In the context of adoption, where the legislative intent to promote the best interest of the child is evidenced throughout the governing statute, and the adoption of a child by two unmarried individuals accomplishes that goal, construing the term 'person' as 'persons' clearly enhances, rather than defeats, the purpose of the statute." (*Adoption of Tammy*, 416 Mass. at 210-12, 619 N.E.2d at 318-19.)

Regarding the standing issue, the Supreme Judicial Court of Massachusetts noted that "[c]learly absent [in the Massachusetts act] is any prohibition of adoption by two unmarried individuals like the petitioners." (*Adoption of Tammy*, 416 Mass. at 212, 619 N.E.2d at 319.) The court went on to state:

"While the Legislature may not have envisioned adoption by same-sex partners, there is no indication that it attempted to define all possible categories of persons leading to adoptions in the best interests of children. Rather than limit the potential categories of persons entitled to adopt *** the Legislature used general language to define who may adopt and who may be adopted." (*Adoption of Tammy*, 416 Mass. at 212, 619 N.E.2d at 319.)

The parallels to the situations presented in these cases and to Illinois law are striking.

The decision in *Adoption of Tammy* followed a similar ruling by the Vermont Supreme Court approving adoption by a lesbian co-parent in *Adoption of B.L.V.B.* (1993), 160 Vt. 368, 628 A.2d 1271. That court acknowledged that it "is highly unlikely the legislature contemplated the possibility of adoptions by same-sex partners, and the scant legislative history does not indicate that such adoptions were considered." (*Adoption of B.L.V.B.*, 160 Vt. at 372, 628 A.2d at 1273.) Nevertheless, because the Vermont legislature, like the Illinois legislature, had indicated that the child's best interests are the key issue in adoption proceedings, and because adoptions by unmarried persons had not been prohibited, the Vermont court allowed the requested adoptions. *Adoption of B.L.V.B.*, 160 Vt. at 372, 628 A.2d at 1273.

Second-parent adoptions by same-sex couples have been approved in many other jurisdictions with similar statutes. See, *e.g.*, *In re Adoption of a Child by J.M.G.* (1993), 267 N.J. Super. 622, 632 A.2d 550; *Adoption of Evan* (1992), 153 Misc. 2d 844, 583 N.Y.S. 997; *In re E.B.G.* (Wash. Super. 1989), No. 87—5—00137—5; *In re Adoption of N.L.D.* (Cal. Super. San Francisco Cty September 28, 1987), No. 18086; *In re Adoption of M.M.S.A.* (Multnomah, OR, Cir. Ct. September 4, 1985), No. D8503—61930; *Adoption of a Minor Child*

(Alaska Super. 1987), No. 1JU—86—73 P/A; *Petition of L.S.* (D.C. Super. 1991), No. A—269—90.

In contrast, the supreme court of Wisconsin recently rejected the right of a lesbian co-parent to adopt, based on the express language of the Wisconsin statute which required that the parental rights of the natural mother had to be terminated before adoption "unless the birth parent is the spouse of the adoptive parent." (*Georgina G. v. Terry M. (In re Angel Lace M.)* (1994), 184 Wis. 2d 492, 512, 516 N.W.2d 678, 684.) The language of the Illinois statute is considerably different. Illinois law provides that a biological or adoptive parent may preserve her parental rights and also consent to an adoption by another person by joining onto an adoption petition as a petitioner:

> "The execution and verification of the petition by any petitioner who is also a parent of the child sought to be adopted shall be sufficient evidence of such parent's consent to the adoption." (750 ILCS 50/8(b)(5) (West 1994).)

While the obvious application of this language is to a natural parent joining in the adoption petition of his or her spouse, this court is guided by the clear terms of the Act and does not infer limitations or exceptions. (*People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014, 1016.) Despite the ruling of the circuit court in this case, there is no language anywhere in the Act which suggests that section 8(b)(5) is limited to married couples. Rather, the section by its terms applies to whenever "any petitioner who is also a parent" joins in an adoption petition so as not to lose parental rights. Liberal construction of this language would apply it broadly, not narrowly, and more inclusively than exclusively. Presumably the General Assembly could have written the language more restrictively if it had wanted to; the Wisconsin legislature certainly did so.

■ The guardian asserts that the circuit court properly construed section 2 of the Act. He cites *Black's Law Dictionary* 979 (6th ed. 1990), defining the word "may" as one not to be treated as a word of command, and thus argues that the language of section 1(G) ("[t]he singular includes the plural and the plural includes the singular *** as the context of this Act *may* require" (emphasis added) (750 ILCS 50/1(G) (West 1994)) means that "person" in section 2 was intended to apply only to single unmarried persons and spouses. He thus argues that no unmarried persons have standing to petition jointly. For reasons previously stated, we reject that argument.

He also argues that because on February 16, 1995, a bill was introduced in the General Assembly that would have amended section 2 to permit two unmarried persons of legal age to institute a joint adoption proceeding (89th Ill. Gen. Assem., House Bill 2261,

1995 Sess.), the current prevailing law is to the contrary. He cites no authority to support this position, and we know of none.

■ Because by its own terms the Act must be liberally construed; because the Act specifically allows for the singular to include the plural; because the "related child" provisions of the Act must be meaningfully interpreted; because considerations concerning the best interests of the child must be applied in construing the Act; and because nothing in the Act specifically precludes it, the Act must be construed to give standing to the unmarried persons in these cases, regardless of sex or sexual orientation, to petition for adoption jointly. Because we so hold, it is unnecessary for us to consider petitioners' alternative arguments.

Petitioners request that this court exercise its power under Supreme Court Rule 366 (134 Ill. 2d R. 366) to grant the petitions. According to petitioners, a thorough investigation was conducted and a best interests hearing was held. Although the findings of DSS, the opinion of the guardian, the recommendations submitted, and the opinion of the circuit court all support a finding that the proposed adoptions would be in the best interests of the children, the circuit court stated explicitly in its memorandum opinion that it was unnecessary for it to address that issue. Because it is essential that the circuit court address the issue of whether the proposed adoptions are in the best interests of the children involved, we remand the causes to the circuit court for hearings on whether the proposed adoptions are in the best interests of the children.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.